■ RYAN A. SLAYKO, Respondent, v SECURITY MUTUAL INSURANCE COMPANY, Appellant, et al., Defendant. [728 NYS2d 282] —Cardona, P. J. Appeal from an order of the Supreme Court (Demarest, J.), entered March 7, 2000 in St. Lawrence County, which, *inter alia,* granted plaintiff's motion for summary judgment.

Plaintiff commenced this action seeking, *inter alia,* a declaration that defendant Security Mutual Insurance Company (hereinafter defendant) has a duty to defend and indemnify its insured, defendant Joseph France, in a personal injury action arising out of an incident occurring on May 13, 1996, at premises owned by France's grandmother, with whom he was living at the time. On that day, plaintiff, a friend of France, sustained serious injuries to his left arm when France picked up a 20-gauge shotgun, cocked it, aimed it in plaintiff's vicinity and pulled the trigger, resulting in plaintiff's injuries.[1] France was apparently unaware that the gun was loaded and insisted that the shooting was accidental. Thereafter, France pleaded guilty to assault in the second degree admitting that he recklessly "cause[d] serious physical injury to [plaintiff] by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [4]).

In opposing plaintiff's claim under the homeowner's general liability insurance policy held by France's grandmother and

---

1. In his deposition, plaintiff states that France actually pulled the trigger twice, although the gun did not discharge until he did so the second time.

another individual, defendant's disclaimer asserted that the shooting was not an "occurrence" within the meaning of the policy and the injury arose out of "criminal activity" by an insured. Following discovery, plaintiff and defendant each moved for summary judgment. Supreme Court granted plaintiff's motion and defendant appeals.

Initially, defendant maintains that Supreme Court erred in granting summary judgment to plaintiff concerning the policy exclusion for "intentional acts." In that regard, defendant argues that because France intended to pull the trigger, the incident was not an accident, i.e., "occurrence" as defined by the policy and coverage should be denied. The policy exclusion for "intentional acts" in the subject policy provides that "[t]his policy does not apply to liability * * * caused intentionally by or at the direction of any insured." Additionally, the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially similar conditions." Notably, in construing issues such as this in order to determine whether an occurrence under the policy exists, it is permissible to find "that the resulting damage was unintended although the original act or acts leading to the damage was intentional" (*McGroarty v Great Am. Ins. Co.*, 36 NY2d 358, 364; *see, Allegany Co-op Ins. Co. v Kohorst*, 254 AD2d 744). "[T]he critical issue is not whether [the cause of the injury] was accidental or intentional, but whether the harm that resulted to the victim * * * was 'expected or intended by the protected person'" (*Jubin v St. Paul Fire & Mar. Ins. Co.*, 236 AD2d 712, 713, quoting *Pistolesi v Nationwide Mut. Fire Ins. Co.*, 223 AD2d 94, 95, *lv denied* 88 NY2d 816).

Here, while it certainly appears that France intentionally pulled the trigger, the fact remains that the record is devoid of evidence that he intended to injure plaintiff or was aware that the gun was loaded prior to its discharge. Significantly, the personal injury complaint, as well as the deposition testimony of plaintiff and France, consistently maintain that France negligently or accidentally caused injury to plaintiff (*cf., Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 281 AD2d 107, 111). This conclusion is not altered by evidence that, prior to discharging the weapon near plaintiff, France first squeezed the trigger and "pumped" the shotgun to eject an empty shell. Defendant failed to present any evidence disputing France's description of the incident, wherein he stated that he first discharged the empty shell and then pulled the trigger again because he wanted to "hear it click." After plaintiff was hit, France exclaimed, "Oh, my god, I shot you" and acted im-

mediately to obtain medical attention for plaintiff. Since defendant has failed to raise a question of fact as to whether France intended the harm to plaintiff, Supreme Court correctly granted summary judgment to plaintiff and concluded that the policy exclusion for "intentional acts" did not apply.

Next, we turn to the more problematic issue of the effect that should be given to the blanket exclusion for "criminal activity" in the policy herein. The provision states that "[t]his policy does not apply to liability arising directly or indirectly out of instances, occurrences or allegations of *criminal activity* by the insured or by employees of the insured named in this policy" (emphasis supplied).[2] The policy further sets forth that this particular exclusion applies regardless of whether the claims are advanced as "sounding in negligence or breach of contract." Significantly, exclusions from coverage are not favored and will be strictly construed (*see, DePaolo v Leatherstocking Coop. Ins. Co.*, 256 AD2d 879). Nevertheless, in interpreting an insurance policy "unambiguous provisions must be given their plain and ordinary meanings" (*Demopoulous v New York Cent. Mut. Fire Ins. Co.*, 280 AD2d 855, 856), but any uncertainty or ambiguity in the meaning of particular provisions must be resolved against the insurance company responsible for drafting the language (*see, Butler v New York Cent. Mut. Fire Ins. Co.*, 274 AD2d 924, 925). "The test for determining whether an insurance provision is ambiguous 'focuses on the reasonable expectations of the average insured upon reading the policy'" (*id.*, at 925-926, quoting *Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326-327).

The homeowner's policy drafted by defendant does not define the phrase "criminal activity," however, defendant urges that, unlike policy provisions excluding coverage for damages reasonably expected to result from criminal acts such as the one interpreted in *Allstate Ins. Co. v Zuk* (78 NY2d 41), the meaning herein is clear and criminal activity of any kind or degree, *even if only alleged*, is excluded regardless of whether the resulting harm was intended. Significantly, Supreme Court determined that, on its face, the exclusion language in this policy unambiguously shielded defendant from liability. Nevertheless, the court found the language employed in defendant's policy so overbroad that it rendered coverage illusory, thus, "foreclos[ing] an insured from coverage for precisely the damages he reasonably thought himself insured."

---

**2.** It should be noted that this exclusion amends exclusion O in the main policy, which originally only excluded the criminal activities of employees of the insured.

We agree with Supreme Court that the provision is against public policy since it would, literally construed, "reduce indemnity to a mere facade" (*Sledge v Continental Cas. Co.*, 639 So 2d 805, 812 [La]). While there are certainly competing public policy concerns prohibiting the insured from being indemnified for his or her own criminal acts, it is also true that:

"The mere fact that an act may have penal consequences does not necessarily mean that insurance coverage for civil liability arising from the same act is precluded by public policy. * * * Whether such coverage is permiss[i]ble depends upon whether the insured, in committing his criminal act, intended to cause injury. One who intentionally injures another may not be indemnified for any civil liability thus incurred. However, one whose intentional act causes an unintended injury may be so indemnified" (*Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392, 399 [citations omitted]). Furthermore, the Court of Appeals in *Allstate Ins. Co. v Zuk (supra)* reaffirmed these underlying public policy concerns. Accordingly, we conclude that since the blanket criminal activity exclusion clearly defies the reasonable expectations of the insured, it was properly struck by Supreme Court as unenforceable (*see, Tower Ins. Co. v Judge*, 840 F Supp 679, 692-693; *see also, Graham v Jackson Assocs.*, 84 NC App 427, 352 SE2d 878).

Mercure, Crew III, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, with costs.

