[893 NYS2d 426]

720-730 FORT WASHINGTON AVENUE OWNERS CORP., Plaintiff, v UTICA FIRST INSURANCE COMPANY et al., Defendants.

Supreme Court, Bronx County, November 4, 2009

**APPEARANCES OF COUNSEL**

*Farber Brocks & Zane, LLP*, Mineola, for Utica First Insurance Company, defendant. *Law Offices of Michael E. Pressman*, New York City, for plaintiff.

Paul A. Victor, J.

## Relief Sought

Defendant Utica First Insurance Company moves for dismissal of the plaintiff's complaint and all cross claims brought against it in this matter, and a declaration that it has no duty to either defend or indemnify the plaintiff in the underlying personal injury action.

## Issue Presented

Should written exclusions inserted into a commercial general liability insurance policy, which render the supposed coverage almost meaningless, be declared unenforceable as violative of the public policy and core objective of New York State to protect construction workers?

## Factual Background

In this action plaintiff 720-730 Fort Washington Avenue Owners Corp. seeks an order and judgment declaring that defendant Utica First and Rauman must indemnify Fort Washington and defend it in a companion personal injury matter. Defendant Utica First moves for an order to dismiss that action.

The alleged tort incident underlying this case occurred on March 23, 2007 at premises owned by plaintiff Fort Washington. At that time, a worker, Marcos Giovanny Castellon, claims to have been injured when a concrete block fell on him. In the related tort action, the parties involved in this incident, are as follows:

1. Plaintiff—Marcos Giovanny Castellon—employee of Rauman Construction Company.

2. Defendant/third-party plaintiff—Fort Washington; owner of the premises.

3. Third-party defendant—Rauman Construction Company—subcontractor; and plaintiff's employer.

On May 15, 2006 Fort Washington entered into a contract with DNA Contracting to perform renovation work at its premises. DNA entered into a subcontract with Rauman that same day to perform masonry and roof replacement work. The contract between DNA and Rauman required that Rauman purchase *commercial general liability coverage* and name DNA and Fort Washington as additional named insureds. Rauman

purchased insurance from Utica which named those entities as additional insureds, but the policy contained three exclusions that are at issue here: (1) an "employee" exclusion, (2) an exclusion for "roofing work," and (3) an exclusion for any liabilities assumed under contract or agreement.

The "employee exclusion" reads as follows:

"This insurance does not apply to:

"(i) bodily injury to any employee of any insured, to any contractor hired or retained by or for any insured *or to any employee of such contractor*, if such claim for bodily injury arises out of and in the course of his/her employment or retention of such contractor by or for any insured, for which any insured may, liable in any capacity;

"(ii) any obligation of any insured to indemnify or contribute with another because of damage arising out of the bodily injury; or

"(iii) bodily injury sustained by the spouse, child, parent, brother or sister of an employee of any insured, or of a contractor, or of an employee of a contractor of any insured as a consequence of the bodily injury to such employee, contractor or employee of such contractor, arising out of and in the course of such employment or retention by or for any insured." (Emphasis added.)

The "roofing work" exclusion reads as follows:

"It is hereby understood and agreed that such insurance as is afforded by coverage L-bodily injury, property damage coverage and coverage N-products/completed work coverage does not apply to bodily injury, property damage, products or completed work *arising out of any roofing operations, which involve any replacement roof or recovering of the existing roof.*" (Emphasis added.)

The exclusion for liabilities assumed under contract or agreement reads as follows:

"1. 'We' do not pay for 'bodily injury', 'property damage', 'personal injury', or 'advertising injury' liability which *is assumed by the 'insured' under a contract or an agreement.*

"This exclusion does not apply to:

"a. Liability that an 'insured' would have had in the absence of the contract or agreement; or

"b. 'Bodily injury or property damage' covered

under the contractual liability coverage, provided that the 'bodily injury' or 'property damage' occurs after the effective date of the contract or agreement." (Emphasis added.)

On March 30, 2007 Castellon commenced a lawsuit only against the premises owner (Fort Washington) in the Supreme Court, Bronx County. In that complaint, Castellon made the following pertinent allegations:

"24. That on March 23, 2007, plaintiff was engaged in the performance of construction, renovation, demolition, painting, repair and or alterations at said premises.

"25. That on March 23, 2007, while working as [*sic*] said premises, plaintiff was struck by a falling and or inadequately secured object causing severe personal injuries";

and in that tort action the plaintiff asserted causes of action for violations of sections 200, 240 and 241 of the Labor Law of the State of New York, as well as a cause of action for common-law negligence.

Utica First received notice of the plaintiff's accident on April 24, 2007; and on June 1, 2007, it received a letter from the counsel for Fort Washington tendering the defense and seeking indemnity for Fort Washington under the Utica First policy. On June 21, 2007, Utica First declined the tender based upon the three exclusions mentioned above. As a result of the disclaimer, DNA and its insurance carrier, Liberty International Underwriters, assumed the defense of Fort Washington pursuant to its contract with the owner.

Fort Washington thereafter commenced a third-party lawsuit against Rauman in the tort action seeking contractual indemnification; and also commenced the instant lawsuit seeking that "a judgment be entered compelling Rauman and Utica to defend and indemnify Fort Washington" for all costs, expenses, and liability.

## Contentions of the Parties

Utica First seeks summary judgment, a dismissal of the plaintiff's complaint and a declaration that it has no duty to defend or indemnify Fort Washington or Rauman. It argues that since Castellon was employed by Rauman to do roofing repair work, the "employee" and "roofing work" exclusions are applicable, and nullify all insurance coverage.

Fort Washington does not argue the inapplicability of the exclusions, but instead argues, among other things, that the insurance policy is illusory and should be held to be against *public policy* since it does not provide any of the insureds with the usual construction site coverage required under its agreement with DNA and Rauman. Fort Washington also contends that the motion should be denied as premature since discovery has not yet been completed; and questions of fact remain as to whether or not Castellon was, in fact, working in the course of his roofing duties with Rauman; and finally, Fort Washington argues that Utica must defend under the policy even if it need not indemnify, since the duty to defend is greater than the duty to indemnify.

As to Fort Washington, Utica argues, among other things, that since Fort Washington has admitted that Castellon was working in the course of his employment with Rauman, and performing roofing operations, no further discovery is necessary since both the "employee" and "roofing" exclusions apply. As to the argument that its insurance contract is violative of public policy, Utica argues that exclusions are necessary to precisely define the scope of coverage. Finally, Utica states that, although the duty to defend is broader than the duty to indemnify, it does not attach when, as here, the complaint and claims are so totally baseless.

## Applicable Law
### Summary Judgment Standards

The proponent of a motion for summary judgment carries the initial burden of production of evidence as well as the burden of persuasion. (*Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986].) Thus, the moving party must tender sufficient evidence to demonstrate as a matter of law the absence of a material issue of fact. Once that initial burden has been satisfied, the burden of production (not the burden of persuasion) shifts to the opponent, who must now go forward and produce sufficient evidence in admissible form to establish the existence of a triable issue of fact. The burden of persuasion, however, always remains where it began, i.e., with the proponent of the issue. Thus if the evidence on the issue is evenly balanced, the party that bears the burden must lose. (*Director, Office of Workers' Compensation Programs v Greenwich Collieries,* 512 US 267, 272 [1994]; *300 E. 34th St. Co. v Habeeb,* 248 AD2d 50 [1st Dept 1997].)

The court's function on this motion for summary judgment is issue finding rather than issue determination. (*Sillman v*

*Twentieth Century-Fox Film Corp.*, 3 NY2d 395 [1957].) Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue. (*Rotuba Extruders v Ceppos*, 46 NY2d 223 [1978].) Thus, when the existence of an issue of fact is even arguable or debatable, summary judgment should be denied. (*Stone v Goodson*, 8 NY2d 8 [1960]; *Sillman v Twentieth Century-Fox Film Corp., supra.*)

Summary judgment has been termed a drastic measure, however, since it deprives a party of his day in court and will normally have res judicata effects (*see* Siegel, NY Prac § 287). Thus, it may be granted without a trial only if no genuine, triable issue of fact is presented (*Werfel v Zivnostenska Banka*, 287 NY 91 [1941]; CPLR 3212 [b], [c]).

Duty to Defend/Duty to Indemnify

It is well settled that an insurer's "duty to defend [its insured] is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage' " (*Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131, 137 [2006]). "The duty to defend . . . is derived from the allegations of the complaint and the terms of the policy. If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend" (*Technicon Elecs. Corp. v American Home Assur. Co.*, 74 NY2d 66, 73 [1989]; *BP A.C. Corp. v One Beacon Ins. Group*, 8 NY3d 708 [2007]).

A duty to defend is triggered by the allegations contained in the underlying complaint. The inquiry is whether the allegations fall within the risk of loss undertaken by the insured "[and, it is immaterial] that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions" (*Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435, 444 [2002]). The merits of the complaint are irrelevant; the insured's right to be accorded legal representation is a contractual one, and is part of the consideration upon which the premium is based. (*See Servidone Constr. Corp. v Security Ins. Co. of Hartford*, 64 NY2d 419 [1985].) This right to defense exists even if debatable theories are alleged in the pleading against the insured. (*See BP A.C. Corp v One Beacon* at 714.)

If the claim, liberally construed, is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be. (*Colon

*v Aetna Life & Cas. Ins. Co.*, 66 NY2d 6 [1985].) However, "a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." (*Northville Indus. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 NY2d 621, 634-635 [1997] [internal quotation marks omitted]; *National RR. Passenger Corp. v Steadfast Ins. Co.*, 2009 WL 562610, 2009 US Dist LEXIS 21311 [SD NY, Mar. 5, 2009].)

Public Policy—Labor Law Violations

Labor Law § 240, being remedial in nature, must be accorded a liberal interpretation so as to extend the widest protection to the worker, in order to "carry out the reforms intended and to promote justice." (McKinney's Cons Laws of NY, Book 1, Statutes §§ 321, 302.)

The core objective of section 240 of the Labor Law (and the public policy of the State of New York) is "proper protection" for construction workers. Therefore, a nondelegable duty is imposed upon all responsible entities to protect construction workers, not just with scaffolds, but with such "other devices . . . as to give proper protection to [such workers]" (Labor Law § 240 [1]). When a construction worker is not provided with "proper protection" and is injured as a result of one of the hazards which section 240 was enacted to eradicate, the general common-law defenses are not available, and absolute liability is vicariously imposed on all those deemed by the Legislature to be responsible entities, i.e. "contractors and owners and their agents." (Labor Law § 240 [1].) Therefore, trial courts have been repeatedly cautioned by the New York Court of Appeals to be guided by one overriding and controlling mandate, namely, that section 240 "is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991], quoting *Quigley v Thatcher*, 207 NY 66, 68 [1912]; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]).

Public Policy—Insurance and Contract Law

As stated by the Court of Appeals in *Slayko v Security Mut. Ins. Co.* (98 NY2d 289, 295 [2002]):

"The 'public policy of this state when the legislature acts is what the legislature says that it shall be.' Conversely, when statutes and Insurance Department regulations are silent, we are reluctant to inhibit freedom of contract by finding insurance

policy clauses violative of public policy. When we recently found an exclusion unenforceable because it detracted from the statutorily-mandated minimum fire insurance coverage, we explicitly limited our decision to matters involving fire insurance (*see Lane v Security Mut. Ins. Co.*, 96 NY2d 1, 6 [2001])." (Some citations omitted.)

Insurers, therefore, are prohibited from limiting their contractual liability *only* as to statutorily mandated coverage. (*Pfoh v Electric Ins. Co.*, 14 AD3d 777 [3d Dept 2005]; *see New York Cent. Mut. Fire Ins. Co. v Nationwide Mut. Ins. Co.*, 307 AD2d 449, 451 [3d Dept 2003] [an exclusion for "criminal acts" held not contrary to public policy, "as the Legislature has expressed a preference to facilitate rather than hinder insurers' efforts to remove coverage for persons who perform criminal acts"]; *TAG 380, LLC v ComMet 380, Inc.*, 10 NY3d 507, 514 [2008] [exclusion in a fire insurance policy that excluded coverage for an intentional fire set by "an insured" not enforceable as violative of Insurance Law § 3404].)

## Discussion

### Indemnity Coverage

The court notes at the outset that no claim has been made by Fort Washington that the three exclusions at issue were vague, ambiguous or inapplicable; and therefore, the sole issue submitted is whether those three exclusions are violative of public policy, and whether, despite the language of those exclusions, Fort Washington might still be entitled to a defense.

In order to fulfill the requirements of the Labor Law and to indemnify themselves during the course of construction, owners and contractors usually purchase insurance coverage for the additional vicarious liability which has been statutorily cast upon them by Labor Law § 240 and the public policy of New York to provide proper protection for construction workers. In addition owners and general contractors often require their subcontractors and other agents to purchase this insurance on their behalf. See, for example, the proper coverage provided by the general contractor herein, DNA, to Fort Washington via its insurance policy purchased from Liberty International Underwriters; and compare same with the Utica First policy. While on its face the Utica First "general liability insurance" policy appeared to provide adequate coverage, the exclusions buried within its terms rendered it inadequate for the purposes intended. In other

words, as to Fort Washington and DNA, the "general liability insurance" policy issued by Utica First was, in essence, misleading. It was certainly not the insurance policy which provided the coverage necessary to protect them from the construction site risks and the vicarious liability imposed by the Labor Law; and it was not the policy which Rauman was required to obtain by its agreement with DNA.

However, the issuance by Utica First of this inadequate insurance policy violated no regulation or statutorily declared public policy regarding the contents of an insurance policy. As stated above, "[t]he public policy of this state . . . is what the legislature says that it shall be . . . [and] when statutes and Insurance Department regulations are silent, [the courts] are reluctant to inhibit freedom of contract by finding insurance policy clauses violative of public policy." (*Slayko v Security Mut. Ins. Co.*, 98 NY2d 289, 295 [2002] [internal quotation marks omitted]; *see also New York Cent. Mut. Fire Ins. Co. v Nationwide Mut. Ins. Co.*, 307 AD2d 449, 451 [2003] [an exclusion for "criminal acts" held not contrary to public policy, "as the Legislature has expressed a preference to facilitate rather than hinder insurers' efforts to remove coverage for persons who perform criminal acts"]; *Pfoh v Electric Ins. Co.*, 14 AD3d 777, 778 [2005] ["resident-relative exclusion" in automobile policy did not violate legislative intent and public policy underlying the liability insurance coverage for motor vehicles mandated by Vehicle and Traffic Law § 311 (4) (a)]; *compare Lane v Security Mut. Ins. Co.*, 96 NY2d 1, 6 [2001] [exclusions found unenforceable because they detracted from the statutorily mandated minimum insurance coverage]; *TAG 380, LLC v ComMet 380, Inc.*, 10 NY3d 507, 514 [2008] [exclusion in a fire insurance policy that excluded coverage for an intentional fire set by "an insured" not enforceable as violative of Insurance Law § 3404].)

The issuance of this worthless policy, although indirectly an impediment to the achievement of the remedial reforms enacted, is not directly violative of the core objective and declared public policy of the Labor Law to protect construction workers by providing them with additional responsible entities and persons. The requirements *of the Labor Law* have been fulfilled, since the statutorily mandated responsibility of the owner (Fort Washington) and general contractor (DNA) is not directly impacted by the failure to obtain insurance. The ability or inability of these entities to pay a damage award (although relevant to the core objective) is a separate issue; and there is no

corresponding public-policy mandate set forth in the Insurance Law, or its implementing regulations, which would "insure" that funds would be available which would provide the coverage needed by "owners, contractors and their agents" to indemnify them from claims made by injured construction workers. In other words, in those instances where uninsured owners and/or contractors do not have the ability to pay a damage award, the public policy of New York is incomplete, and thus defeated. This weakness in the law could easily be remedied by a statute or regulation which would mandate the issuance of a "uniform construction site insurance policy." Such a mandated uniform insurance policy, of course, should preclude an insurance carrier from incorporating such exclusions, or if included, have them declared unenforceable as violative of public policy. Obviously, there are many construction companies which have no assets beyond the funds provided by insurance to pay a damage award. For them and for their workers, the laudable core objective becomes an empty gesture without insurance coverage. It would certainly seem practical, and reasonable, therefore, to extend the worker-protection public policy goal to the Insurance Law and/or its implementing regulations. However, since the Legislature has not yet chosen to further implement and fortify the Labor Law's core objective by an amendment to the Insurance Law, this court is powerless to do so.

Caveat Emptor

Unfortunately, the Insurance Law and the Insurance Department regulations are silent and provide no explicit guidance or protections for insureds as to the minimum requirements for a construction site insurance policy. Although the silence of the Legislature seems somewhat inconsistent with the Labor Law's core objective, the only rule applicable here is "caveat emptor"—*let the buyer beware*! "This maxim summarizes the rule that a purchaser must examine, judge and test for himself." (Black's Law Dictionary 281 [4th ed].) While the insurance policy may have been misleading and rendered meaningless due to the exclusions, Fort Washington and DNA nevertheless had a duty to do a "due diligence" review of the policy presented by Rauman. Had they read the policy when it was first presented they may have observed the exclusions and rejected the policy as not in compliance with the construction contract requirements. Having failed to do so, they left themselves exposed; and there is no public-policy mandate which the court can utilize to rescue them or the injured worker, if these entities do not have

sufficient coverage and/or the ability to pay a damage award. In that regard the court notes that, because of the absence of any statutory mandate, Utica First, the defendant herein, has been repeatedly successful in having its insurance policy exclusions judicially upheld. (*See for example Bassuk Bros. v Utica First Ins. Co.*, 1 AD3d 470, 471 [2d Dept 2003] [exclusion for "bodily injury to an employee of an Insured if it occurs in the course of employment" upheld]; *Utica First Ins. Co. v Star-Brite Painting & Paperhanging*, 36 AD3d 794, 796 [2d Dept 2007] [exclusion in automobile policy for claims of "negligent hiring" upheld]; *Ruge v Utica First Ins. Co.*, 32 AD3d 424 [2d Dept 2006] [an automobile exclusion under a contractor's insurance policy upheld]; *Massot v Utica First Ins. Co.*, 36 AD3d 499 [1st Dept 2007] [denial of coverage on basis of the policy's exclusion for services rendered by an unlicensed employee upheld]; *Sixty Sutton Corp. v Illinois Union Ins. Co.*, 34 AD3d 386 [1st Dept 2006] ["employee exclusion" upheld].)

As stated above, the court is sympathetic to the argument advanced by Fort Washington that the exclusions resulted in only an illusion of coverage. Unfortunately, this court is constrained by the decision of the Court of Appeals in *Slayko* (*supra*) to enforce the contract with its exclusions, as written by defendant Utica First and accepted by the plaintiff.

Defense

The court finds, under the circumstances of this case, that Utica First need not provide a defense to Fort Washington. While it is axiomatic that the duty to defend is broader than the duty to indemnify, the obligation to defend is not here even arguable. Coverage having been rendered moot by the exclusions, there is no legitimate reading of the complaint under which this coverage could be deemed plausible. Thus, it would be manifestly unreasonable to impose a duty to defend.

## Conclusion

The motion by Utica First against Fort Washington is granted in its entirety, and the complaint is dismissed as to defendant Utica First.

The court notes that defendant Rauman failed to respond to the motion by Utica First for dismissal of all cross claims in this action, and therefore, the motion by Utica First to dismiss Rauman's cross claims against it is granted on default.