# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

857

CA 13-00319

PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, VALENTINO, AND WHALEN, JJ.

---

PREFERRED MUTUAL INSURANCE COMPANY,
PLAINTIFF-RESPONDENT,

           V                     MEMORANDUM AND ORDER

JOHN DONNELLY, ET AL., DEFENDANTS,
AND ROBERT JACKSON, DEFENDANT-APPELLANT.

---

ATHARI & ASSOCIATES, LLC, UTICA (MO ATHARI OF COUNSEL), FOR
DEFENDANT-APPELLANT.

BROWN & KELLY, LLP, BUFFALO (JOSEPH M. SCHNITTER OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

---

Appeal from a judgment (denominated order and judgment) of the
Supreme Court, Oneida County (Samuel D. Hester, J.), entered November
14, 2012. The judgment, inter alia, granted the motion of plaintiff
insofar as it sought summary judgment declaring that plaintiff has no
duty to defend or indemnify its insured, defendant John Donnelly, in a
personal injury action commenced by defendant Robert Jackson against
Donnelly and others.

It is hereby ORDERED that the judgment so appealed from is
affirmed without costs.

Memorandum: Contrary to the contention of defendant Robert
Jackson, Supreme Court properly granted plaintiff's motion insofar as
it sought summary judgment declaring that plaintiff has no duty to
defend or indemnify its insured, defendant John Donnelly, in a
personal injury action brought by Jackson against, inter alia,
Donnelly. From June 1995 until December 1995, Jackson lived in a home
owned by Donnelly, who had obtained a landlord's insurance policy from
plaintiff. The policy was renewable each year during the three-year
period from June 1993 through June 1996. It is undisputed that, when
the policy was initially written, it did not contain any exclusion of
coverage for bodily injury sustained as a result of lead poisoning.
That exclusion was added to the policy when it was renewed in June
1994. The exclusion provided, in relevant part, that plaintiff would
"not pay for loss resulting directly or indirectly from *bodily injury*
. . . resulting from inhalation or ingestion of dust, chips or other
residues of lead or lead based materials adorning the interior or
exterior of the covered building(s)."

We conclude that plaintiff met its initial burden of establishing

that the lead exclusion was properly added to the policy and that notice of the lead exclusion amendment was provided to Donnelly. Contrary to Jackson's contention, plaintiff submitted evidence in admissible form to support its motion. Although many of the documents appended to the attorney affirmation were not in admissible form (*see KOI Med. Acupuncture v State Farm Ins. Co.*, 16 Misc 3d 1135[A], 2007 NY Slip Op 51705[U], *2; *see generally* CPLR 4518 [a]), we conclude that the affidavit from plaintiff's Office Services Supervisor was sufficient to lay a proper foundation for the business records attached thereto (*see* CPLR 4518 [a]; *cf. Unifund CCR Partners v Youngman*, 89 AD3d 1377, 1378, *lv denied* 19 NY3d 803; *Palisades Collection, LLC v Kedik*, 67 AD3d 1329, 1330-1331; *see generally People v Kennedy*, 68 NY2d 569, 579-580).

With respect to the substance of the attachments, we conclude that the documents established as a matter of law that the lead exclusion was properly added to Donnelly's insurance policy and that Donnelly was notified of that amendment. Although plaintiff did not submit evidence that the notice of the amendment was mailed to Donnelly and Donnelly could not recall receiving the notice, plaintiff submitted evidence in admissible form "of a standard office practice or procedure designed to ensure that items are properly addressed and mailed," thereby giving rise to a presumption that Donnelly received the notice (*Residential Holding Corp. v Scottsdale Ins. Co.*, 286 AD2d 679, 680; *see Nocella v Fort Dearborn Life Ins. Co. of N.Y.*, 99 AD3d 877, 878). Contrary to the contention of Jackson, the evidence submitted by plaintiff established that the "office practice [was] geared so as to ensure the likelihood that [the] notice[s of amendment] . . . [were] always properly addressed and mailed" (*Nassau Ins. Co. v Murray*, 46 NY2d 828, 830; *see Badio v Liberty Mut. Fire Ins. Co.*, 12 AD3d 229, 229-230; *cf. Hospital for Joint Diseases v Nationwide Mut. Ins. Co.*, 284 AD2d 374, 375). Specifically, the evidence established the procedure used by plaintiff for generating notices whenever an insurance policy was amended, and the documentary evidence established that a notice was generated for Donnelly's policy during the year in which the lead exclusion was added to the policy. In addition, plaintiff submitted evidence that it placed the notices in envelopes with windows so that the address on the notice was the one used for mailing. The envelopes were then delivered to the mail room, where they were sealed and the appropriate postage was added. Thereafter, the mail was hand delivered to the post office that was located adjacent to plaintiff's parking lot.

While we agree with the dissent that there was no evidence submitted of a practice to ensure that the number of envelopes delivered to the mail room corresponded to the number of envelopes delivered to the post office (*see Clark v Columbian Mut. Life Ins. Co.*, 221 AD2d 227, 228-229; *Matter of Lumbermens Mut. Cas. Co. [Collins]*, 135 AD2d 373, 375; *cf. Matter of State-Wide Ins. Co. v Simmons*, 201 AD2d 655, 656), we do not deem the absence of such evidence fatal to plaintiff's motion in light of the detailed description of all of the other office practices geared toward ensuring the likelihood that the notices were always properly addressed and mailed (*cf. Hospital for Joint Diseases*, 284 AD2d at

375; *L.Z.R. Raphaely Galleries v Lumbermens Mut. Cas. Co.*, 191 AD2d 680, 681-682; *Lumbermens Mut. Cas. Co.*, 135 AD2d at 374-375). Additionally, "[a]s long as there is adequate [evidence from] one with personal knowledge of the regular course of business, it is not necessary to solicit testimony from the actual employee in charge of the mailing" (*Lumbermens Mut. Cas. Co.*, 135 AD2d at 375). Here, plaintiff submitted evidence from someone with personal knowledge concerning the specific procedures used by plaintiff to ensure that the addresses on the envelopes were accurate and concerning the "office procedures relating to the delivery of mail to the post office" (*id.*). In opposition to the motion, Jackson failed to raise a triable issue of fact "that [the] routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed" (*Nassau Ins. Co.*, 46 NY2d at 830).

Contrary to Jackson's further contention, the lead exclusion does not violate public policy. As noted by both this Court and the Court of Appeals, "[t]here is no statutory requirement for the full panoply of coverages known as homeowner's insurance and hence 'no prohibition against such insurers limiting their contractual liability' " (*Slayko v Security Mut. Ins. Co.*, 98 NY2d 289, 295, quoting *Suba v State Farm Fire & Cas. Co.*, 114 AD2d 280, 284, *lv denied* 67 NY2d 610, *appeal dismissed* 68 NY2d 665). Thus, the mere fact that a landlord is required to keep his or her property in a habitable condition pursuant to Real Property Law § 235-b " 'cannot be construed as a holding that public policy requires the responsible party to be covered by insurance or that an insurance company cannot exclude liability for that particular [condition]' " (*Suba*, 114 AD2d at 284). We further conclude that the lead exclusion is not inconsistent with state and local building code provisions or with other provisions of the insurance policy, each of which requires landlords to use a protective coating of paint to guard against deterioration (*see e.g.* State Uniform Fire Prevention and Building Code §§ 1242.5, 1242.7; City of Utica Code § 210). While such provisions require the use of paint, they do not require the use of lead-based paint, and thus they are not inconsistent with the policy's lead exclusion.

Contrary to the contention of Jackson, the terms of the lead exclusion are not ambiguous and should be enforced. Generally, "[i]nsurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured" (*Cragg v Allstate Indem. Corp.*, 17 NY3d 118, 122; *see Dean v Tower Ins. Co. of N.Y.*, 19 NY3d 704, 708). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case" (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652). We agree with plaintiff that the lead exclusion is stated in clear and unmistakable language and is not subject to any other reasonable interpretation. While Jackson contends that the use of the word "adorn" in the lead exclusion limits its application to decorative paint such as murals and frescos, we reject that contention. According to the clear and unmistakable language of the insurance policy, the lead-based paint at issue adorned the interior of the

residence.

Finally, we conclude that plaintiff neither waived its right to assert the lead exclusion nor is estopped from asserting that exclusion. "Waiver is an intentional relinquishment of a known right and should not be lightly presumed" (*Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 968). Although plaintiff settled a prior lawsuit involving Jackson's sibling, that settlement was executed before this action was commenced and involved a child who lived at the residence on different dates. We thus conclude that there is "no evidence from which a clear manifestation of intent by [plaintiff] to relinquish the protection of the contractual [exclusion] could be reasonably inferred" (*id.*; *see Matter of Progressive Northeastern Ins. Co. [Heath]*, 41 AD3d 1321, 1322). We have reviewed Jackson's remaining contentions concerning estoppel and conclude that they are without merit.

All concur except CARNI and WHALEN, JJ., who dissent and vote to modify in accordance with the following Memorandum: Defendant Robert Jackson appeals from a judgment that granted plaintiff's motion for, inter alia, summary judgment declaring that plaintiff had no duty to defend or indemnify its insured, defendant John Donnelly, in a personal injury action brought by Jackson against Donnelly and others. As relevant to this appeal, the judgment also denied Jackson's cross motion for, inter alia, summary judgment declaring that plaintiff is obligated to defend and indemnify Donnelly in the underlying action.

We respectfully disagree with the majority's conclusion that Supreme Court properly granted plaintiff's motion insofar as it sought summary judgment because plaintiff met its burden of establishing as a matter of law that Donnelly was notified that a lead exclusion was added to his insurance policy. As the majority notes, a presumption that Donnelly received notice of the lead exclusion is created if plaintiff presents evidence that its "office practice [was] geared so as to ensure the likelihood that [the] notice[s] . . . [were] always properly addressed and mailed" (*Nassau Ins. Co. v Murray*, 46 NY2d 828, 830; *see Residential Holding Corp. v Scottsdale Ins. Co.*, 286 AD2d 679, 680; *Abuhamra v New York Mut. Underwriters*, 170 AD3d 1003, 1003). Although we agree with the majority that plaintiff presented evidence of its procedure to ensure that notices were properly compiled and addressed, we disagree that the evidence submitted by plaintiff established that it had a standard office procedure to ensure that notices were always properly mailed. Plaintiff submitted the affidavit of its former Office Services Supervisor, in which the supervisor stated that, after the disclosure notices and policy amendments were compiled, the documents were inserted into a "window envelope" that was to be mailed to the insured and the insured's agent. The next business day, the envelopes would be taken to the mail room, after which a mail room employee would add postage, seal the envelopes, and take them to the post office.

Plaintiff offered no evidence regarding how it ensured that all of the envelopes that should have been mailed were delivered to the mail room or how it ensured that all of the envelopes that were

delivered to the mail room were, in fact, mailed.  There was no
showing, for example, that mail room employees checked the number of
envelopes to be mailed against a mailing list or internal report to
ensure "that the total number of envelopes matched the number of names
on the mailing list" (*Clark v Columbian Mut. Life Ins. Co.*, 221 AD2d
227, 229 [internal quotation marks omitted]; *see L.Z.R. Raphaely
Galleries v Lumbermens Mut. Cas. Co.*, 191 AD2d 680, 681-682; *Matter of
Lumbermens Mut. Cas. Co. [Collins]*, 135 AD2d 373, 375; *cf. Badio v
Liberty Mut. Fire Ins. Co.*, 12 AD3d 229, 230; *Matter of State-Wide
Ins. Co. v Simmons*, 201 AD2d 655, 656).  Without evidence that
plaintiff took any measures to ensure that all of the notices were in
fact mailed, we conclude that plaintiff's submissions were
insufficient to establish as a matter of law that its standard office
procedures were "geared so as to ensure the likelihood that a notice
of [amendment] is always properly . . . mailed" (*Nassau Ins. Co.*, 46
NY2d at 830).  We respectfully disagree with the majority's conclusion
that the absence of evidence of such internal verification procedures
is not fatal to plaintiff's motion insofar as it sought summary
judgment.  The presumption of receipt arises only if plaintiff's
office practice ensured that the notices were "always properly
addressed *and* mailed" (*id.* [emphasis added]).  Thus, we conclude that
plaintiff's evidence was insufficient to give rise to the presumption
of receipt and that the court therefore erred in granting plaintiff's
motion insofar as it sought summary judgment.  Consequently, we would
modify the judgment by denying plaintiff's motion insofar as it sought
summary judgment declaring that plaintiff had no duty to defend or
indemnify Donnelly in the underlying action.

We otherwise agree with the analysis of the majority, and we
further conclude that Jackson failed to meet his initial burden on
that part of his cross motion seeking summary judgment declaring that
plaintiff is obligated to defend and indemnify Donnelly in the
underlying action.  We thus conclude that the court properly denied
that part of the cross motion.