*629
 
 OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiff is a Long Island-based corporation engaged in the bulk storage, distribution and sale of gasoline and other petroleum products. During the pertinent period, it owned and operated petroleum storage and distribution facilities in Holtsville and East Setauket, New York. Both terminals contained aboveground and belowground storage tanks, and networks of
 
 *630
 
 underground pipelines and pumps for transferral of liquid petroleum products. During the period in question plaintiff carried primary comprehensive general liability insurance policies with either defendants National Union Fire Insurance Co. of Pittsburgh, Pa., or Hartford Accident and Indemnity Company, and excess general liability policies with defendants Continental Insurance Company or Pacific Insurance Company (collectively referred to as the defendant insurers).
 

 All of the foregoing liability insurance policies provided coverage for liability stemming from an "occurrence,” defined as "an accident, including
 
 continuous or repeated exposure
 
 to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured” (emphasis supplied). Each policy also contained a pollution exclusion clause barring coverage for bodily injury or property damage "arising out of the discharge, dispersal, release or escape of * * * toxic chemicals, liquids * * * or other * * * pollutants into or upon land * * * but this exclusion does not apply if such discharge, dispersal, release or escape is
 
 sudden and
 
 accidental” (emphasis supplied).
 

 In 1986 and 1987, plaintiff discovered that there had been a fortuitous release of gasoline from plaintiff’s Holtsville and East Setauket facilities into the groundwater, which had then migrated underneath neighboring properties. Plaintiff’s investigation disclosed that approximately 750,000 gallons of gasoline had been lost at the Holtsville terminal and 1.2 million gallons at East Setauket.
 

 Owners of the affected neighboring properties brought suit against plaintiff. Defendant insurers disclaimed coverage under the pollution exclusion clauses in their respective policies. Plaintiff then brought this declaratory judgment action to establish the insurers’ obligation to defend and indemnify with regard to those lawsuits. On cross motions for summary judgment, Supreme Court ruled that, because it could not be determined initially whether the gasoline leakages occurred suddenly, defendants National Union Fire Insurance Company and Hartford Accident and Indemnity Company were required to defend and bear the investigation costs of the underlying actions. Based on the pleadings in the underlying complaints and the facts subsequently admitted by plaintiff, however, Supreme Court further held that the "sudden and accidental” exception to the exclusion of pollution coverage did not apply as to the East Setauket terminal discharge; hence defendant insurers had no duty to indemnify. The court held, however, that as to
 
 *631
 
 the claims arising from the Holtsville gasoline release, the facts were inconclusive as to whether at least at its outset the discharge was sudden; thus, the court denied summary judgment to defendant insurers on the issue of their duty to indemnify plaintiff for liability on the underlying claims.
 

 The Appellate Division modified by ruling that the defendant insurers had no obligation to defend or indemnify because the sudden and accidental discharge exception in the pollution exclusion clauses of the policies did not apply, as a matter of law, to either the Holtsville or East Setauket discharges (218 AD2d 19). We granted plaintiff leave to appeal, and now affirm.
 

 In
 
 Technicon Elecs. Corp. v American Home Assur. Co.
 
 (74 NY2d 66,
 
 rearg dismissed
 
 74 NY2d 843,
 
 rearg denied
 
 74 NY2d 893), we held that the identical language as in the pollution exclusion clauses of the policies issued to plaintiff here was unambiguous and that, for the sudden and accidental discharge exception to the exclusion of pollution coverage to apply,
 
 both
 
 contingencies included in the exception had to be satisfied. "Stated conversely, discharges that are either nonsudden or nonaccidental block the exception from nullifying the pollution exclusion”
 
 {id.,
 
 at 75). We further held that, as a matter of law, the term "accidental” excludes any intentional discharge of a pollutant from qualifying for the exception. Because the complaint in the underlying action in
 
 Technicon
 
 alleged a knowing discharge, and the insured’s answer to that complaint admitted intentionally discharging waste, we ruled in that case that there was no accidental discharge. Therefore, we held that the exception to the pollution exclusion from coverage did not apply and the insurer had no duty to defend or indemnify against liability claims in the underlying suit
 
 {id.).
 

 In the instant case, there is no allegation in the underlying complaints against plaintiff, nor evidence submitted by the defendant insurers, that the gasoline discharges at plaintiff’s Holtsville and East Setauket terminals were anything but unintentional and unknown to plaintiff before they were discovered in 1986 and 1987. Defendant insurers, thus, do not dispute that the discharges from both facilities were accidental, thereby satisfying one of the two elements of the exception to the exclusion of pollution coverage. The parties agree, therefore, that the dispositive issue before this Court is whether the discharges in question were also "sudden” within the meaning of that term in the pollution exclusion clauses of defendant insurers’ policies.
 

 
 *632
 
 Plaintiff argues that, at least in the context of an inadvertent underground discharge of pollutants, the word "sudden” is ambiguous, which under familiar insurance law doctrine requires resolution of this issue against the insurers and in favor of plaintiff insured, construing the sudden and accidental discharge exception to apply. Plaintiff relies heavily on one common definition of sudden as "happening * * *
 
 unexpectedly”
 
 (Webster’s 9th New Collegiate Dictionary 1178 [1990] [emphasis supplied]). Plaintiff concedes that the meaning of
 
 sudden
 
 may also have a temporal element "manifesting abruptness * * * [or] brought about in a short time”
 
 (id.).
 
 Plaintiff, however, contends that in the context of an undiscovered underground leak of a pollutant the "unexpected” aspect of
 
 sudden
 
 should predominate, or at least render the term ambiguous.
 

 Plaintiff’s argument ignores the juxtaposition of
 
 sudden
 
 with "accidental” in the pollution exclusion clause exception, and our unequivocal precedents that the two terms have separate meanings, each of which must be established for the exception to nullify the pollution coverage exclusion
 
 (see, Technicon Elecs. Corp. v American Home Assur. Co., supra; Powers Chemco v Federal Ins. Co.,
 
 74 NY2d 910). Furthermore, the term "accidental” includes not only an unintended event but also one "occurring
 
 unexpectedly
 
 or by chance” (Webster’s 9th New Collegiate Dictionary 49 [emphasis supplied]). This meaning of
 
 accidental
 
 is well recognized and has generally been applied in construing insurance policies
 
 (see, Nallan v Union Labor Life Ins. Co.,
 
 42 NY2d 884, 885;
 
 Johnson Corp. v Indemnity Ins. Co.,
 
 7 NY2d 222, 228; 70 NY Jur 2d, Insurance, § 1333, at 108), and cannot be disregarded in the context of the use of the term in a standard pollution exclusion clause.
 

 It follows from the foregoing analysis that eliminating the temporal aspect from the meaning of sudden in the exception to the pollution coverage exclusion would render the sudden and accidental contingencies of the exception unavoidably redundant for unintended pollutant discharges. This redundancy is removed by including within the meaning of
 
 sudden
 
 in the pollution exclusion exception its temporal quality, as a discharge of the pollutant
 
 abruptly, precipitantly or brought about in a short time.
 
 Such a construction accords with the mandate of
 
 Technicon Elecs. Corp. v American Home Assur. Co. (supra),
 
 to give separate effect to the dual, sudden and accidental discharge requirements of the exception, and with the general principle that courts, in interpreting insurance poli
 
 *633
 
 cies, should strive to give "meaning * * * to every sentence, clause, and word of a contract of insurance” (69 NY Jur 2d, Insurance, § 701, at 91-92;
 
 see also, Hartford Acc. & Indem. Co. v U. S. Fid. & Guar. Co.,
 
 962 F2d 1484, 1489,
 
 cert denied sub nom. El Paso Natural Gas Co. v Hartford Acc. & Indem. Co.,
 
 506 US 955).
 

 Applying the temporal element of
 
 sudden
 
 — as an abrupt happenstance — in the pollution exclusion clause exception also conforms to the commonsense meaning of the term and the reasonable expectations of a business person
 
 (see, Michaels v City of Buffalo,
 
 85 NY2d 754, 757), since the exception exists in the context of an insurance contract which is universally recognized as intended to exclude damage from persistent pollution from the policy’s expansive basic coverage of "occurrence” which includes "continuous or repeated exposure to conditions.” As other courts have aptly observed, "[w]e cannot reasonably call 'sudden’ a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process”
 
 (Shell Oil Co. v Winterthur Swiss Ins. Co.,
 
 12 Cal App 4th 715, 754, 15 Cal Rptr 2d 815, 841). "Try as I will, I cannot wrench the words 'sudden and accidental’ to mean 'gradual and accidental,’ which must be done in order to provide coverage in this case”
 
 (Dimmitt Chevrolet v Southeastern Fid. Ins. Corp.,
 
 636 So 2d 700, 706 [Fla] [Grimes, J., concurring]).
 

 The focus in determining whether the temporally sudden
 
 discharge
 
 requirement is met, for the purpose of nullifying the pollution coverage exclusion, is on the initial release of the pollutant, not on the length of time the discharge remains undiscovered, nor the length of time that damage to the environment continued as a result of the discharge, nor on the timespan of the eventual dispersal of the discharged pollutant in the environment
 
 (see, Hartford Acc. & Indem. Co. v U. S. Fid. & Guar. Co.,
 
 962 F2d, at 1491,
 
 supra; Johnson & Co. v Aetna Cas. & Sur. Co.,
 
 933 F2d 66, 72;
 
 Lumbermens Mut. Cas. Co. v Belleville Indus.,
 
 407 Mass 675, 681, 555 NE2d 568, 572;
 
 Shell Oil Co. v Winterthur Swiss Ins. Co.,
 
 12 Cal App 4th, at 754-757, 15 Cal Rptr 2d, at 841-842,
 
 supra).
 

 On the other hand, the sudden discharge element of the pollution exclusion exception cannot be established merely by showing that the release of the pollutant had its onset at some particular point in time and, in that sense, the discharge could be said to have begun "abruptly.” As noted by Justice Thomas R. Sullivan at the Appellate Division, "since every dispersal of
 
 *634
 
 pollution begins with the abrupt entry of molecules of the offending substance into the surrounding environment, [under such a] strained construction of the exception, the suddenness requirement would be rendered meaningless” (218 AD2d, at 30,
 
 supra).
 
 Rather, the temporal aspect of the sudden discharge element would only be met by the discharge, abruptly or within a short timespan, of a significant quantity of the pollutant sufficient to have some potentially damaging environmental effect. When such a discharge was unintended and unexpected, the sudden and accidental exception in the pollution exclusion clause will have been satisfied. Coverage, however, would not necessarily be negated entirely if such a discharge continued undetected for some period of time, even though at some point continued release could no longer be deemed sudden or accidental for purposes of the duty to indemnify
 
 (see, Lumbermens Mut. Cas. Co. v Belleville Indus., supra,
 
 407 Mass, at 681, n 6, 555 NE2d, at 572, n 6;
 
 Shell Oil Co. v Winterthur Swiss Ins. Co.,
 
 12 Cal App 4th, at 754-757, 15 Cal Rptr 2d, at 841-842,
 
 supra).
 

 Once an insurer has satisfied its burden of establishing that the underlying complaint alleges damages attributable to the discharge or release of a pollutant into the environment, thereby satisfying the basic requirement for application of the pollution coverage exclusion provision, the burden shifts to the insured to demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within the sudden and accidental discharge exception to exclusion of pollution coverage, or to show that extrinsic evidence exists that the discharge was in fact sudden and accidental. Shifting the burden to establish the exception conforms with an insured’s general duty to establish coverage where it would otherwise not exist, provides the insured with an incentive to strive for early detection that it is releasing pollutants into the environment and appropriately places the burden of proof on the party having the better and earlier access to the actual facts and circumstances surrounding the discharge
 
 (see, Borg-Warner Corp. v Insurance Co.,
 
 174 AD2d 24, 31,
 
 lv denied
 
 80 NY2d 753;
 
 Aeroquip Corp. v Aetna Cas. & Sur. Co.,
 
 26 F3d 893, 894-895 [9th Cir];
 
 Northern Ins. Co. v Aardvark Assocs.,
 
 942 F2d 189, 195 [3d Cir]).
 

 In determining whether the underlying complaint can be read as even potentially bringing the claim within the sudden and accidental exception to the exclusion of pollution coverage, a court should not attempt to impose the duty to defend on an
 
 *635
 
 insurer through a strained, implausible reading of the complaint "that is linguistically conceivable but tortured and unreasonable”
 
 (State of New York v Amro Realty Corp.,
 
 936 F2d 1420, 1428 [2d Cir] [applying New York law]). Moreover, a court may look to judicial admissions in the insured’s responsive pleadings in the underlying tort action or other formal submissions in the current or underlying litigation to confirm or clarify the nature of the underlying claims
 
 (see, Technicon Elecs. Corp. v American Home Assur. Co.,
 
 74 NY2d, at 75,
 
 supra).
 

 Plaintiff has failed here to sustain its burden of showing that the sudden and accidental exception to the pollution exclusion clauses in defendant insurers’ policies applies. There is an absence of any allegations in the underlying complaints from which any claim of an abrupt, environmentally significant discharge of pollutants could be inferred. Moreover, the allegations regarding the temporal aspects of the petroleum leakages actually describe them as having occurred continuously over a period of many years, suggesting the opposite of suddenness. This view of the underlying claims is confirmed by the affidavits submitted by plaintiff’s chief legal officer in support of its motion for summary judgment, in which the source of the East Setauket discharge was identified as a corrosion-based "pinhole” in an underground pipe, and the Holtsville discharge was described as having been "leaked” through a failed underground elbow joint sometime after installation in July 1976. Thus, under the allegations of the present underlying complaints and the present state of the record regarding plaintiff’s own version of the occurrences, the sudden and accidental discharge exception in the pollution exclusion provisions of defendant insurers’ policies does not apply, as a matter of law.
 

 The Appellate Division therefore correctly declared that the defendant insurers are not obligated to defend or indemnify against the liability of plaintiff for the gasoline discharges at its Holtsville or East Setauket facilities.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order affirmed, with costs.