11-2596-cv
Ment Bros. Iron Works Co. v. Interstate Fire & Casualty Co.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: September 5, 2012     Decided: December 11, 2012)

Docket No. 11-2596

- - - - - - - - - - - - - - - - - - - - -x

MENT BROS. IRON WORKS CO., INC.,

Plaintiff-Appellant,

- v.-

INTERSTATE FIRE & CASUALTY CO.,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - -x

Before:      JACOBS, Chief Judge, CALABRESI and
             CARNEY, Circuit Judges.

Ment Bros. Iron Works Co., Inc. appeals from a judgment of the United States District Court for the Southern District of New York (Hellerstein, J.) granting summary judgment in favor of Interstate Fire & Casualty Co. in an insurance dispute.  Reversed.

> NEAL M. EISMAN, Goetz
> Fitzpatrick LLP, New York, NY,
> for Appellant Ment Bros. Iron
> Works Co., Inc.

STUART M. BODOFF, Rivkin Radler LLP, Uniondale, NY (Evan H. Krinick, Gary D. Centola, Jay Kenigsberg, Erik Lindemann, on the brief), for Appellee Interstate Fire & Casualty Co.

RICHARD VOLACK, Peckar & Abramson, P.C., New York, NY (Cesar F.F. Pereira, on the brief), for Amicus Curiae Allied Building Metal Industries, Inc., in support of Appellant.

DENNIS JACOBS, Chief Judge:

This declaratory judgment action disputes liability insurance coverage for property damage alleged to have been caused by the policyholder, a welding subcontractor, during construction of a residential building at 40 Mercer Street in New York City.  Forty Mercer was planned and marketed by the developer as a residential condominium, though no units had been sold at the time the damage occurred.  The general commercial liability coverage (with an aggregate limit of $2 million) excludes property damage "arising out of the construction of 'residential properties,' except 'apartments.'"  "Residential properties" is defined to include condominiums.  An apartment is defined as "a unit of residential real property in a multi-unit residential

building or project where all units are owned by and titled to a single person or entity."

The policyholder, Ment Bros. Iron Works Co., Inc. ("Ment") filed suit against Interstate Fire & Casualty Co. ("Interstate") seeking a declaration that its insurer is obligated to defend and indemnify. Ment appeals from the judgment of the United States District Court for the Southern District of New York (Hellerstein, J.) granting summary judgment in favor of Interstate. The district court ruled that 40 Mercer was a "residential property" construction but not an "apartment" at the time the damage occurred--meaning that Ment had no coverage. Because we conclude that 40 Mercer was an apartment building as defined in the insurance policy when the damage occurred, Ment was covered by the policy. We therefore reverse.

**I**

WXIV/Broadway Grand Realty, LLC ("WXIV/Broadway"), a building owner and developer, began construction at 40 Mercer Street in 2005, using Pavarini McGovern, LLC ("Pavarini") as general contractor. Pavarini subcontracted the welding to Ment. Ment completed its work between April

3

and July 2006.  At the time, WXIV/Broadway was the sole fee owner of the building and project at 40 Mercer.

Thereafter, Pavarini discovered damage to the penthouse windows, allegedly caused by welding sparks.  Pavarini sued Ment in New York state court.  See Pavarini McGovern, LLC v. Ment Bros. Ironworks, Index No. 107637/09 (N.Y. Sup. Ct. 2011) (York, J.).  Ment called on Interstate to defend the suit and indemnify it.  Interstate assigned counsel to defend, but soon reserved its rights on the ground that the damage had occurred during the construction of a condominium, citing the residential construction exclusion.  Interstate agreed to furnish a defense until Ment's counsel could file a motion for summary judgment.  When Ment's counsel advised Interstate that such a motion was not yet feasible, Interstate gave thirty days' notice that it would relinquish the defense, so that Ment could make its own arrangements.

Ment filed a two-count complaint in the Southern District of New York seeking a declaration that Interstate had duties of defense and indemnity on the underlying Pavarini claim.  See Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co., No. 10 Civ. 3043 (Dkt. No. 1) (S.D.N.Y.

4

Apr. 9, 2010) (Hellerstein, J.). Cross-motions for summary judgment were filed on January 18, 2011. At oral argument on June 13, 2011, the district court ruled from the bench. A summary order explained that the residential construction exclusion applied "[f]or the reasons provided on the record," and therefore "grant[ed] summary judgment to Interstate dismissing the Complaint." Summ. Order, at 1 (Dkt. No. 46) (S.D.N.Y. June 13, 2011). Ment timely filed a notice of appeal.

**II**

We review an order granting summary judgment de novo, drawing all factual inferences in favor of the non-moving party. Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011). Likewise, we review de novo the interpretation of contracts, including insurance agreements. Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc., 644 F.3d 166, 169 (2d Cir. 2011).

**III**

The provisions at issue are contained in Endorsement ICB-6002 (12/04), entitled "RESIDENTIAL CONSTRUCTION

EXCLUSION WITH APARTMENT EXCEPTION." The fuller text is in the margin.[1] The critical wording of the exclusion and the exception (so labeled) is set out as follows, decisive terms emphasized:

> This insurance does not apply to . . . "property

[1] This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the construction of "residential properties", except "apartments". In the event any "apartment" to which coverage under this policy applies is converted to a "condominium, townhome or multi-family dwelling", then coverage under this policy is excluded for any claims for "bodily injury", "property damage", "personal and advertising injury", arising out of, related to, caused by, or associated with, in whole or part, the construction of said "apartments" which occur after the conversion of the "apartment" into a "condominium, townhome or multi-family dwelling".

As used in this endorsement, the following terms have the following meanings:

1. "Residential properties" include but are not limited to single-family dwellings, "townhomes, condominiums or multifamily dwellings".

2. "Apartment" means a unit of residential real property in a multi-unit residential building or project where all units are owned by and titled to a single person or entity.

3. "Condominium, townhome or multi-family dwelling" means a unit of residential real property in a multi-unit residential building or project where each unit is separately owned and titled.

J.A. 87.

damage" . . . arising out of the construction of "residential properties" [**the exclusion**], *except* "*apartments*" [**the exception**].

J.A. 87 (emphasis added). The exclusion and exception are followed by qualifying language, which applies to "apartments" that are converted to "condominiums":

> In the event any "apartment" to which coverage under this policy applies is *converted* to a "condominium, . . . ", *then* coverage under this policy is excluded for any claims for . . . "property damage" arising out of, related to, caused by, or associated with, in whole or part, the construction of said "apartments" which occur *after the conversion* of the "apartment" into a "condominium, townhome or multi-family dwelling" [**qualifying language**].

Id. (emphases added).


**IV**

Under New York law, which governs this dispute, an insurer bears the burden of proving that an exclusion applies. See, e.g., Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 218 (2002) ("Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage."); 2 Allan D. Windt, Ins. Claims & Disputes § 9:1 (5th ed. 2010). Once the insurer establishes that an exclusion applies, however, New York law has evolved to

7

place the burden of proof on the insured to establish the applicability of an *exception to the exclusion.*

This Court has previously interpreted New York law to be that the insurer retains the burden of also showing that an exception to the exclusion is inapplicable.  See New York v. Blank, 27 F.3d 783, 789 (2d Cir. 1994) (citing Colonial Tanning Corp. v. Home Indem. Co., 780 F. Supp. 906, 919 (N.D.N.Y. 1991)); see also Town of Union v. Travelers Indem. Co., 906 F. Supp. 782, 787 (N.D.N.Y. 1995) (applying Blank). But New York law on this point has changed since 1994.

In Northville Industries Corp. v. National Union Fire Insurance Co. of Pittsburgh, 89 N.Y.2d 621 (1997), the New York Court of Appeals held that once an insurer establishes that an exclusion applies, "the burden shifts to the insured to demonstrate" that an exception to the exclusion applies. Id. at 634; see also Hritz v. Saco, 795 N.Y.S.2d 236, 237 (1st Dep't 2005); Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 10.02[a][1] (14th ed. 2008) (collecting cases applying burden-shifting rule). Several district courts in this Circuit have recognized the shift in New York law.  See, e.g., RSUI Indem. Co. v. RCG Grp. (USA), --- F. Supp. 2d ---, 2012 WL 3100636, at *9 &

8

n.8 (S.D.N.Y. July 31, 2012); Mahl Bros. Oil Co. v. St. Paul Fire & Marine Ins. Co., 307 F. Supp. 2d 474, 494 (W.D.N.Y. 2004). Because this Court has not had occasion to consider this issue of New York law since Blank, we now acknowledge that after an insurer establishes that a policy exclusion applies, the burden shifts to the policyholder to prove that an exception to that exclusion applies.

Thus if Interstate can show that the residential construction exclusion applied to Ment's work on 40 Mercer, then Ment must show that the apartment exception to the exclusion preserved Ment's coverage.

## V

The exclusion forecloses coverage for "'property damage' . . . arising out of the construction of 'residential properties.'" J.A. 87. "Residential properties" are defined to "*include but are not limited to* single-family dwellings, 'townhomes, condominiums or multifamily dwellings.'" Id. (emphasis added).

"The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the

9

contract." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks omitted). Terms in an insurance contract must be given "'their plain and ordinary meaning.'" 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 119 (2d Cir. 2010) (quoting Essex Ins. Co. v. Laruccia Constr., Inc., 898 N.Y.S.2d 558, 559 (2d Dep't 2010)).

Forty Mercer qualifies as a "residential property" under the ordinary meaning of the term. Moreover, the term is defined in the contract to include properties such as single-family homes, townhomes, condominiums, or similar properties. In any event, the parties do not dispute that the 40 Mercer building was a new construction of a "residential property" at the time the damage occurred.

The harder question is whether Ment's coverage is preserved nevertheless by the exception to the exclusion. Although coverage is excluded for "'property damage' . . . arising out of the construction of 'residential properties,'" there is the exception for "apartments," which are defined as "a unit of residential real property in a multi-unit residential building or project where all units are *owned by and titled to a single*

10

*person or entity*." J.A. 87 (emphasis added). An "apartment" is in that respect the opposite of a "condominium," which is defined as "a unit of residential real property in a multi-unit residential building or project where *each unit is separately owned and titled*." Id. (emphasis added).

The record is clear that, in 2006, 40 Mercer was an apartment building rather than a condominium. The sale deed in the record shows that in 2001, the property was sold by multiple owners to WXIV/Broadway alone. The documentation of the mortgage obtained by WXIV/Broadway in October 2005 clearly shows that WXIV/Broadway was the owner of the entire 40 Mercer property. There is no claim or evidence that any unit of the planned condominium had been transferred when Ment finished performing its welding subcontract in the summer of 2006.

Since 40 Mercer met the policy's definition of "apartment" at the relevant time, we therefore hold that Ment has sustained its burden to show that the apartment exception to the residential construction exclusion applies and that it is entitled to coverage on this loss.

**VI**

Interstate seeks to elide the fact of unitary ownership of the building. Instead, Interstate points to condominium offering literature filed with the New York Attorney General, which shows that 40 Mercer was intended from the outset to be sold as condominiums, and cites New York cases suggesting that the ultimate intended use of a building is determinative. See, e.g., Admiral Ins. Co. v. Joy Contractors, Inc., 917 N.Y.S.2d 168 (1st Dep't 2011).[2]

We are unpersuaded. The contract wording governs. Whatever the developer's design or marketing plan, the wording of the exception to the exclusion, and the related definitions, indicate that Ment was covered. Moreover, the qualifying language in the policy supports the view that an apartment is not a condominium until after conversion:

> *In the event* any "apartment" to which coverage under this policy applies *is converted* to a "condominium, . . . ", *then* coverage under this policy is excluded for any claims for . . . "property damage" arising out of . . . the

---

[2] After briefing was completed in this appeal, the New York Court of Appeals affirmed but modified the opinion of the First Department in Admiral Insurance Co. See Admiral Ins. Co. v. Joy Contractors, Inc., 19 N.Y.3d 448 (2012). The Court of Appeals explicitly observed that a developer's "intent does not control whether" a policy containing a residential construction exclusion affords coverage. Id. at 458.

> construction of said "apartments" which occur *after the conversion* of the "apartment" into a "condominium, townhome or multi-family dwelling."

J.A. 87 (emphases added).  Interstate does not dispute that at the time the damage occurred, the 40 Mercer project was owned by and titled to a single owner.

Although the language of the policy governs and settles the dispute, Interstate's argument regarding ultimate intent is additionally unpersuasive because under New York law, a building does not become a condominium until a condominium declaration is filed.  "A parcel of real property becomes a condominium and thus is subject to the jurisdiction of the Condominium Act by the filing of a declaration."  Schoninger v. Yardarm Beach Homeowners' Ass'n, 523 N.Y.S.2d 523, 527 (2d Dep't 1987) (internal citations omitted); see also id. at 526-27 ("In New York the creation and administration of condominiums is governed by the provisions of [the Condominium Act]."); 19A N.Y. Jur. 2d Condos. § 80 (2012). Without a "valid and existing condominium declaration," a condominium's "existence is not recognized at law."  Local 798 Realty Corp. v. 152 W. Condo., 830 N.Y.S.2d 79, 80 (1st Dep't 2007).

13

WXIV/Broadway did not file a condominium declaration until February 9, 2007, after Ment had completed its work on 40 Mercer.  WXIV/Broadway and everyone involved in the project may have intended and anticipated that 40 Mercer would become a condominium, but it was not a condominium under New York law until the declaration was filed in February 2007.

Even if the apartment exception to the residential construction exclusion were ambiguous, any ambiguity must be construed against Interstate as drafter of standard contract wording.  See Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383 (2003) ("It follows that policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer.").  The same principle applies regardless of whether, as to a particular clause, the burden of proof falls on the insurer or the policyholder.  See Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co., 877 N.Y.S.2d 359, 361-62 (2d Dep't 2009) (construing an ambiguous term in an exception to an exclusionary clause against the insurer).

To the extent it matters, there would seem to be good reason why an insurer would draft wording to avoid coverage

14

for residential units that are held by multiple owners. Although Interstate did not explain the purpose of the apartment exception to the residential construction exclusion, Ment suggested that its purpose is to provide coverage for contractors facing liability from a single building owner but not for contractors facing numerous potential suits from various individual residential owners.[3]

Because we hold that the apartment exception applied to Ment's work on the 40 Mercer building, we need not consider Ment's remaining arguments on appeal regarding equitable and promissory estoppel.

For the foregoing reasons, we reverse the judgment of the district court.

---

[3] That explanation is consistent with one industry publication, which attributes the rise of residential exclusions in commercial general liability policies to the fact that "construction defect litigation, spearheaded by the residential sector" has "increased dramatically over the last few years." Patrick J. Wielinski & Marc A. Young, New Challenges to Insurance Coverage for Defective Construction, 56 Fed'n Def. & Corp. Couns. Q. 175, 178-81 (2006) (describing the "cost of defense of massive subdivision-wide and homeowners association condominium claims," as well as difficulties associated with "insurance coverage litigation among multiple parties and their insurers").