Travelers Cas. & Sur. Co. v Vale Can. Ltd. (2025 NY Slip Op 50254(U))

[*1]

Travelers Cas. & Sur. Co. v Vale Can. Ltd.

2025 NY Slip Op 50254(U)

Decided on February 26, 2025

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 26, 2025
Supreme Court, New York County

Travelers Casualty & Surety Company, Plaintiff,

against
Vale Canada Limited, AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., CGU INTERNATIONAL INSURANCE PLC, F/K/A COMMERCIAL UNION ASSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, FIREMANS FUND INSURANCE COMPANY, GENERAL REINSURANCE CORPORATION, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, INSURANCE COMPANY OF NORTH AMERICA, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, ZURICH ASSURANCE LTD. F/K/A MIDLAND ASSURANCE LTD., SOMPO JAPAN NIPPONKOA INSURANCE, INC. F/K/A NIPPON F&M, ALLSTATE NORTHBROOK INDEMNITY COMPANY, F/K/A NORTHBROOK INDEMNITY COMPANY, ROYAL & SUN ALLIANCE INSURANCE COMPANY OF CANADA F/K/A ROYAL INSURANCE COMPANY OF CANADA, JOHN DOE INSURERS 1-10, Defendant.

Index No. 654028/2021

Counsel for Plaintiffs: Day Pitney LLP, 605 Third Ave. 31st Floor, New York, NY 10158
Counsel for Defendants: Pillsbury Winthrop Shaw Pittman LLP, 31 W 52nd St, New York, NY 10019; Kennedys CMK LLP, 570 Lexington Avenue 8th Floor, New York, NY 10022

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 027) 662, 663, 664, 665, 666, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676, 677, 678, 679, 680, 681, 682, 683, 684, 685, 686, 687, 688, 689, 690, 691, 692, 693, 694, 695, 696, 697, 698, 699, 700, 701, 702, 703, 758, 759, 760, 761, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772, 773, 774, 775, 776, 777, 778, 779, 780, 781, 782, 783, 784, 785, 786, 787, 788, 789, 790, 791, 792, 793, 794, 795, 796, 797, 798, 799, 800, 801, 802, 803, 804, 805, 806, 807, 808, 809, 810, 811, 812, 910, 911, 912, 913, 914, 915, 916, 917, 918, 919, 920, 921, 922, 923, 924, 925, 926, 927, 928, 929, 930, 931, 932, 933, 934, 935, 936, 937, 938, 939, 940, 941, 942, 943, 944, 945, 946, 947, 948, 949, 950, 951, 952, 953, 954, 955, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 968, 969, 970, 971, 972, 973, 974, 975, 976, 977, 978, 979, 980, 981, 982, 983, 984, 985, 986, 987, 988, 989, 990, 991, 992, 993, 994, 995, 996, 997, 998, 999, 1000, 1001, 1002, 1003, 1004, 1005, 1006, 1007, 1008, 1009, 1010, 1011, 1012, 1013, 1014, 1015, 1016, 1017, 1018, 1019, 1020, 1021, 1022, 1023, 1024, 1025, 1026, 1027, 1028, 1029, 1030, 1031, 1032, 1033, 1034, 1035, 1036, 1037, 1038, 1039, 1040, 1041, 1042, 1043, 1044, 1045, 1046, 1047, 1048, 1049, 1062, 1063, 1089, 1090, 1091, 1092 were read on this motion to/for JUDGMENT - DECLARATORY.
The following e-filed documents, listed by NYSCEF document number (Motion 029) 709, 710, 711, 712, 713, 714, 715, 716, 717, 718, 719, 720, 721, 722, 723, 724, 725, 726, 727, 728, 729, 730, 731, 734, 813, 814, 815, 816, 817, 818, 819, 820, 821, 822, 823, 824, 825, 826, 827, 828, 829, 830, 831, 832, 833, 834, 835, 836, 837, 838, 839, 840, 841, 842, 843, 844, 845, 846, 847, 848, 849, 850, 851, 852, 853, 854, 855, 856, 857, 858, 859, 860, 861, 862, 863, 864, 865, 866, 867, 868, 1064, 1065, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, 1075, 1085, 1086, 1088 were read on this motion to/for SUMMARY JUDGMENT(AFTER JOINDER.
The following e-filed documents, listed by NYSCEF document number (Motion 030) 735, 736, 737, 738, 739, 740, 741, 742, 743, 744, 745, 746, 747, 748, 749, 750, 751, 752, 753, 754, 755, 756, 757, 1050, 1051, 1052, 1053, 1054, 1055, 1056, 1057, 1058, 1059, 1060, 1061, 1076, 1077, 1078, 1079, 1083, 1084, 1094, 1095, 1096, 1097, 1098, 1099, 1100, 1101, 1102, 1103, 1104, 1105, 1106, 1107, 1108, 1109, 1110, 1111, 1112, 1113, 1114, 1115, 1116, 1122, 1123, 1124, 1125 were read on this motion to/for MISCELLANEOUS.
The following e-filed documents, listed by NYSCEF document number (Motion 034) 1134, 1135, 1136, 1137, 1138, 1139, 1140, 1141, 1142, 1143, 1144, 1145, 1146, 1147, 1148, 1149, 1150, 1151, 1152, 1153, 1154, 1155, 1156, 1157, 1158, 1159, 1160, 1161, 1162, 1163, 1164, 1165, 1166, 1167, 1168, 1169, 1170, 1171, 1172, 1173, 1174, 1175, 1176, 1177, 1178, 1179, 1180, 1181, 1182, 1183, 1184, 1185, 1186, 1187, 1252, 1253, 1254, 1255, 1256, 1257, 1258, 1259, 1260, 1261, 1262, 1263, 1264, 1265, 1266, 1267, 1268, 1269, 1270, 1271, 1272, 1273, 1274, 1275, 1276, 1277, 1278, 1279, 1280, 1281, 1282, 1283, 1284, 1285, 1286, 1287, 1288, 1289, 1290, 1291, 1292, 1293, 1294, 1295, 1296, 1297, 1298, 1299, 1300, 1301, 1302, 1303, 1304, 1305, 1306, 1307, 1308, 1309, 1310, 1311, 1312, 1313, 1314, 1315, 1316, 1317, 1318, 1319, 1320, 1321, 1322, 1323, 1324, 1325, 1326, 1327, 1328, 1329, 1330, 1331, 1332, 1333, 1334, 1335, 1336, 1337, 1338, 1339, 1340, 1341, 1342, 1343, 1344, 1345, 1346, 1347, 1348, [*2]1349, 1350, 1351, 1352, 1353, 1354, 1355, 1356, 1357, 1358, 1359, 1360, 1361, 1362, 1363, 1364, 1365, 1366, 1367, 1368, 1369, 1370, 1371, 1372, 1373, 1374, 1375, 1376, 1377, 1378, 1379, 1380, 1381, 1382, 1383, 1384, 1385, 1386, 1387, 1388, 1389, 1390, 1391, 1392, 1402, 1403, 1404, 1405 were read on this motion to/for PARTIAL SUMMARY JUDGMENT.
The following e-filed documents, listed by NYSCEF document number (Motion 035) 1188, 1189, 1190, 1191, 1192, 1193, 1194, 1195, 1196, 1197, 1198, 1199, 1200, 1201, 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1210, 1211, 1212, 1213, 1214, 1215, 1216, 1217, 1218, 1219, 1220, 1221, 1222, 1223, 1224, 1225, 1226, 1227, 1228, 1229, 1230, 1231, 1232, 1233, 1234, 1235, 1236, 1237, 1238, 1239, 1240, 1241, 1242, 1393, 1394, 1395, 1396, 1397, 1398, 1399, 1400, 1401, 1406 were read on this motion to/for PARTIAL SUMMARY JUDGMENT.
Upon the foregoing documents and for the reasons set forth below and on the record (tr. 2.21.25), (I) Travelers Casualty and Surety Company (Travelers)'s motion (Mtn. Seq. No. 027) and (II) the North River Insurance Company (North River) and United States Fire Insurance Company (US Fire; US Fire, North River and Travelers, collectively, hereinafter, the Insurers)'s motion (Mtn. Seq. No. 029) for summary judgment seeking a declaration that the Pollution Exclusion (hereinafter defined) unambiguously bars recovery for any of Vale Canada's insurance claims at the Copper Cliff Smelter, Thompson Complex, Pipe Mine, and Chicago Mine sites (collectively, the Test Sites) are GRANTED. 
Simply put, the insurance policies (the Policies) contained an exclusion (the Pollution Exclusion) for property damage resulting from pollution. The Policies however provided an exception to the Pollution Exclusion where the damage arises from the "sudden and accidental" discharge (the Sudden and Accidental Exception) of the pollution or other contamination, including any waste materials:
This insurance does not apply . . . to . . . property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
(e.g., NYSCEF Doc. No. 663; see also NYSCEF Doc. No. 690).
Because even were the Court to apply Zatko v. Paterson Spring Service Ltd., (1985) OJ No. 1327, [1986] ILR. 1-1997 (Ont HCJ) instead of the later decided BP Can. Inc. v. Comco Serv. Station Contrs. & Maint. Ltd., 1990 CarswellOnt 637 [Can Ont HCJ 1990] or New York law, the consequential pollutant to another area of the property after Vale Canada Limited (Vale Canada) knew of any spillage and made whatever remedial decisions that it decided to make as to those pollutants would not fall within the Sudden and Accidental Exception to the Pollution Exclusion. As such, Vale Canada does not have coverage under the Policies.
However, and as discussed below, it is not clear that a choice of law analysis is [*3]appropriate because as Vale Canada's expert, Gordon G. Hilliker, K.C, [FN1]
previously explained in a case captioned Teck Metals Ltd v. Certain Underwriters at Lloyds, 2010 WL 8981695 (ED Wash May 25, 2010), and looking at Ontario authority in opining as to the law in British Columbia, the law is unsettled in Ontario such that there may not be a settled conflict warranting a choice of law analysis:
57. Mr. Brown references three Ontario lower court decisions dealing with the qualified pollution exclusion. They are not binding in British Columbia. They may be considered persuasive in that they may act as a guide to a judge in British Columbia, but they would have to be considered with other persuasive authority from the United States, which I reference below and which supports a contrary conclusion. Moreover, it should be noted that the three Ontario lower court decisions are not fully congruent with each other. They reach different conclusions. In Murphy Oil. Co. v. Continental Insurance Co. the court held that property damage resulting from a continuous leak of oil for a 3 month period from an underground storage tank fell within the "sudden and accidental" exclusion to the qualified pollution exclusion. The court reasoned that a leak in a pipe must always occur suddenly in the sense that at one time the pipe is functional and at another time it springs a leak. It is implicit in the reasons that a leak does not lose the element of suddenness by continuing over an extended period of time, a proposition which was questioned in the subsequent Ontario decision in B.P. Canada Inc. v. Comco Service Station Const. & Maintenance Ltd. In Zatko v. Patterson Spring Service Ltd., which was distinguished in B.P. Canada, oil had drained out of the defendant's underground storage tank for a considerable period of time, collected on the defendant's property, and had gradually, through the action of water and the slope of the land, moved onto the plaintiffs property. The plaintiff discovered oil on his land and complained to the defendant, who promptly drained and excavated the underground tank. Yet oil continued to seep onto the plaintiffs premises. The defendant was aware of this and took no further remedial action. In these circumstances the court held that the original escape of oil onto the plaintiffs premises was sudden and accidental and was covered under the policy, whereas the damage that occurred after the insured became aware of the problem and chose to ignore it was not covered.
(the Teck Affirmation; NYSCEF Doc. No. 1079 ¶ 57 [emphasis added]).[FN2]
 It would appear however that even were the Court to do a choice of law analysis, under R. v Sullivan, 2022 SCC 19 and applying "horizontal stare decisis," the Court "must follow the most recent authority unless the [Hansard Spruce Mills] criteria above are met" (id. ¶ 79). The most recent case is BP not Zatko. As the Insurers' expert, Mr. Paliare explains, and as discussed further below, not only is there no authority supporting Mr. Hilliker's position that BP is not good law, but subsequent Ontario courts have agreed with the reasoning in BP that "sudden and accidental" can not mean merely unintended because such definition would render the word "sudden" meaningless or "surplusage"(the Paliare Affirmation; NYSCEF Doc. No. 1061 ¶¶ 9, 16). 
Under either BP or New York law, there is no question that the Sudden and Accidental Exception would not apply and that the Pollution Exclusion would apply such that Vale Canada does not have coverage because under both BP and New York law, the word "Sudden" is interpreted to include a temporal element to it.
Vale Canada's motion (Mtn. Seq. No. 030) for judicial notice of Ontario Law pursuant to CPLR § 4511 is denied as moot. 
Vale Canada's motions (Mtn. Seq. Nos. 34 and 35) for partial summary judgment on the issue of notice are DENIED. 
For the avoidance of doubt, Vale Canada's cross-motions (Mtn. Seq. Nos. 027 and 029) for partial summary judgment are DENIED because they do not comply with the Part 53 Rules, which state that "[n]o cross-motions for summary judgment will be permitted" (Practices-Part-53.pdf at 5). THE RELEVANT FACTS AND CIRCUMSTANCES
As relevant, this is a case where the Insurers seek a declaration that the Pollution Exclusion unambiguously bars recovery for any of Vale Canada's insurance claims at the 27 different sites where Vale Canada has indicated that there is pollution and potential "contamination of third-party property for which Vale is legally liable under applicable law" (NYSCEF Doc. No. 692). 
For clarity, the Court notes that four sites were used as an adequate sampling of the sites (i.e., Test Sites) for the purpose of discovery and application of the rulings in this decision and order as to all 27 sites in determining whether Vale Canada has coverage under the Policies. Vale Canada and the Insurers were each permitted to pick two sites as samples for discovery and [*4]for the Court's review. Vale Canada selected the Pipe Mine and Chicago Mine sites. The Insurers selected the Copper Cliff Smelter and Thompson Complex sites.

 DISCUSSION
Summary judgment shall be granted only when the movant presents evidentiary proof in admissible form that there are no triable issues of material fact and that there is either no defense to the cause of action or that the cause of action or defense has no merit (CPLR § 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The proponent of a summary judgment motion carries the initial burden to make a prima facie showing of entitlement to judgment as a matter of law (Alvarez, 68 NY2d at 324). Failure to make such a showing requires denial of the motion (id. [citing Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 (1985)]). Once this showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form to establish the existence of material issues of fact requiring trial (id.).
As discussed above, the critical issue is whether the Sudden and Accidental Exception to the Pollution Exclusion applies such that Vale Canada has coverage under the Policies. Under New York law, an insurer bears the initial burden of demonstrating that the underlying property damage in a claim is "attributable to the discharge or release of a pollutant into the environment" (Northville Industries Corp. v National Union Fire Insurance Co., 89 NY2d 621, 628, 634 [1997]). Once the insurer makes this showing, "the burden shifts to the insured to demonstrate that the discharge was in fact sudden and accidental" (id. at 634). 
The Sudden and Accidental Exception is based on the "initial release of the pollutant, not on the length of time the discharge remains undiscovered, nor the length of time that damage to the environment continued as a result of the discharge, nor on the timespan of the eventual dispersal of the discharged pollutant in the environment" (id. at 633). As such, the exception "cannot be established merely by showing that the release of the pollutant had its onset at some particular point in time and, in that sense, the discharge could be said to have begun abruptly" (id.). "Rather, the temporal aspect of the sudden discharge element would only be met by the discharge, abruptly or within a short timespan, of a significant quantity of the pollutant sufficient to have some potentially damaging environmental effect" (id. at 634).
The Insurers moved for summary judgment on the basis that the Pollution Exclusion contained in each of the Policies clearly and unambiguously bars recovery for any of Vale Canada's coverage claims for the Test Sites because it is undisputed that the pollutant damage for which Vale Canada claims coverage arise out of the gradual discharge, release, or dispersal of pollutants over the course of many decades such that it cannot be said that the pollution was "sudden" within the meaning of the Sudden and Accidental Exception. 
In support of their position, the Insurers adduce, among other things, (i) Vale Canada's claim notice to Travelers (NYSCEF Doc. No. 692), in which Vale Canada admits that its "historical and current operations in these locations may have given rise to pollution or [*5]contamination of third-party property for which Vale is legally liable under applicable law" (id. at 1), and (ii) Vale Canada's interrogatory responses (NYSCEF Doc. No. 693), in which Vale Canada describes its claims for the Test Sites as relating to actual or alleged contamination arising from the leaching of metal particulates over decades as a result of a phenomenon known as acid rock drainage into groundwater:
f) the Sudden and Accidental Event that forms a basis for the Claim, if any, including but not limited to the location and date of such Sudden and Accidental Event: All of the suspected property damage described in (b) above and all of the occurrences described in (d) above were unexpected and unintended. Vale Canada is awareness of the location and date of the unexpected and unintended suspected property damage and/or occurrences is evolving; to the extent awareness exists, Vale Canada refers to its documentary production.
j) the medium contaminated (e.g., soil, groundwater, surface water, etc.): Operations at this site have or may have given rise to contamination of third-party property, including groundwater. Vale Canada further refers to its documentary production.
(e.g., id. at 10, 23). 
In addition, the Insurers argue that Vale Canada's corporate witness, Lisa Lanteigne, was also unable to identify a "sudden" event that caused the groundwater damage. At best, they argue she was only able to speculate that there must have been a pipe break:[FN3]

Q: With regard to Copper Cliff smelter, what is the—is there a sudden and accidental event—and, again, when I say "sudden," I'm meaning abrupt in terms of time—event that took place at the Copper Cliff smelter that resulted in contamination for which Vale is currently seeking compensation from the insurers?
A: Well, I would say in this case of the smelter and because of the milling and the tailings areas as part of that  this footprint and this site now, I would say there were probably a number of pipeline breaks that would have resulted in spills, so that would be temporally abrupt. But, generally speaking, I think a lot of  most of the groundwater contamination or impacts would have been as a result of a longer term process of either acid mine drainage or metal leaching and leaching in general. So not temporally abrupt, but unexpected.
Q: You mentioned that there were probably pipeline breaks. As you sit here today testifying on behalf of Vale, are you aware of any kind of temporally sudden event that took place at Copper Cliff smelter that resulted in the contamination for which Vale is seeking to recover against the insurers?
A: I can't speak to a specific event. But I just know there have been events in the past that I'm aware of. Don't ask  I can't pinpoint when they happened, but there were frequent [*6]line breaks historically.
Q: A couple of questions on that. When were any of those line breaks, pipeline breaks? During what years did those take place?
A: I'm sorry, I'm saying I don't have the specific timelines. But with respect to the smelter, I'm not sure. I don't think we've recorded them. Just I know they exist and I think we identify line breaks as potential sources in our closure plans and groundwater studies as potential source of contamination, so  but I don't have specific dates for you.
Q: As you sit here today, does Vale have any evidence that there was any pipeline break during any policy period from 1968 to 1986?
A: As I sit here today, do I have the evidence? I don't aside from what I've read or  in the closure plans or groundwater studies.
(NYSCEF Doc. No. 694 at 296:16-298:22).
Thus, and because the Policy language is clear and unambiguous, the Insurers argue that they have met their prima facie burden of entitlement to summary judgment that there are no issues of fact as to whether the decades-long consequential pollution at issue in this case falls under the Sudden and Accidental Exception such that its coverage is not excluded by the Pollution Exclusion. 
In their opposition papers, Vale Canada argues that the Court must first conduct a choice of law analysis to determine whether the Policies are subject to Ontario law, as contended by Vale Canada, or New York law, as contended by the Insurers. 
To wit, Vale Canada argues that (i) Canadian courts must follow "horizontal stare decisis," (ii) the relevant controlling authority is Zatko, and (iii) Ms. Lanteigne identified spillage in the Copper Cliff Smelter site reports (NYSCEF Doc. No. 1141) and that the consequential groundwater pollutant falls within the Sudden and Accidental Exception to the Pollution Exclusion. The arguments fail.
The first step under New York's choice of law analysis is to determine whether there is an actual conflict between the laws of the two jurisdictions involved (In re Allstate Ins. Co. and Solarz, 81 NY2d 219, 223 [1993]). Courts will not engage in a choice of law analysis in the absence of an actual conflict.
As an initial matter, the Court notes that Vale Canada fails to identify settled law in Ontario that presents a conflict warranting a conflict of law analysis. Vale Canada relies on their expert Mr. Hilliker who indicates that Canadian courts are bound by "horizontal stare decisis," whereby "once a judge of the Ontario Superior Court of Justice decides a point of law it becomes a decided matter and is binding on other judges of the court unless and until it is overturned by the Ontario Court of Appeal or the Supreme Court of Canada" (NYSCEF Doc. No. 743 ¶ 11).
As such, and relying on Mr. Hilliker's testimony, Vale Canada contends that the relevant controlling Ontario precedent is Zatko (id. ¶¶ 35, 38) which was decided in 1985 (and before BP was decided which according to Mr. Hilliker is inconsistent with the earlier decided Zatko). In [*7]Zatko, the Ontario trial court held that the Sudden and Accidental Exception applied to damage caused by an underground oil tank leak despite the gradual escape of oil over time (id. ¶¶ 31-32).[FN4]
Thus, according to Mr. Hilliker, the "the scope of the 'sudden and accidental' exception to the pollution exclusion and the extent to which it may incorporate a temporal element is as expressed in Zatko" (id. ¶ 41). 
Based on this opinion, Vale Canada claims that there is no temporal element at all under Ontario law. But this is more than Mr. Hilliker says in his opinion in this case (or in his affirmation in the Teck case), it is (as discussed above) more than the Zatko court held, and, as discussed in this decision, it is at odds with the Ontario BP court's analysis in 1990 — some five years after Zatko was decided.
As discussed above, Mr. Hilliker indicates only that the temporal element of the Sudden and Accidental Exception under Ontario law is as set forth in Zatko. He simply does not say that the law is settled in Ontario and that there is no temporal element at all under Ontario law. In fact, he says the opposite of that. According to Mr. Hilliker, the law is unsettled based on Murphy Oil Co. v Continental Insurance Co., [1981] O.J. No. 3095, 33 O.R. (2d) 853 (Ont. Co. Ct.), Zatko and BP. Thus, having failed to identify settled law that is in conflict with New York law, it does not appear that a choice of law analysis is appropriate.
Second, even were the Court to apply horizontal stare decisis, the Court would nonetheless be required to follow the most recent caselaw that has spoken on the matter, which is BP (NYSCEF Doc. No. 1124 ¶ 6). In his opinion, Mr. Hilliker asserts that the BP court rejected the reasoning of the prior Ontario court decisions without offering a basis for doing so (NYSCEF Doc. No. 743 ¶ 34) and as such he concludes that the law in Ontario inconsistent. He further opines in sum and substance that the BP court did not follow horizontal stare decisis such that BP is not good law. But, he offers no case from Ontario that has held that in the 35 years since BP was decided.[FN5]
He also opines that, based on Sullivan, that were the Ontario Court of Appeal [*8]to adjudicate the Sudden and Accidental Exception, they would follow Zatko (although he concedes that they do not have to [NYSCEF Doc. No. 743 ¶ 39]) and reject BP. As such, Mr. Hilliker takes the position that, because BP and Zatko cannot be read in harmony with each other, BP improperly ignored horizontal stare decisis such that it cannot be considered good law. 
Mr. Hilliker is simply incorrect in his interpretation of Sullivan because he misconstrues which court must follow the most recent authority (id. ¶¶ 7-11). The relevant court is this Court. It is not, as Mr. Hilliker argues, that the BP court was required to apply horizontal stare decisis in its analysis of Zatko and, having failed to do so, has rendered its rulings invalid. Sullivan does not stand for the proposition of retroactive application of horizontal stare decisis, and Mr. Hilliker does not indicate as much in his treatise or in his Teck Affidavit. Rather, Sullivan indicates that the Court must follow the most recent authority unless the Hansard Spruce Mills criteria apply.[FN6]
As such, since BP is the most recent Ontario trial court decision to apply the Sudden and Accidental Exception, the Court is bound to follow it.
In BP, the Ontario court did a thorough analysis of the development of the law in Ontario. As part of this review, the Ontario court explained that there has been a paucity of cases decided in Ontario and that the Ontario courts generally look to the development of the law in America. As part of his analysis, the BP court reviewed both Zatko and Murphy Oil and indicated that there was no coverage as to the pollutant at issue in that under the Sudden and Accidental Exception. In reaching this conclusion, the BP court incorporated a temporal element to the Sudden and Accidental Exception such that the exception was not to be extended to include unintended consequences that are not brought upon "suddenly." The BP court noted that the Zatko court drew a distinction between "the original escape of oil and the pollution which occurred subsequent" to the original leak (1990 CarswellOnt 637). In addition, the BP court emphasized that the Sudden and Accidental Exception applied to the pipe leak in Murphy Oil specifically because, "[i]f a leak occurs in a pipe . . . it occurs suddenly for whatever reason" in that "the pipe becomes defective in that it 'springs' a leak" (id.). Not only is this consistent with New York law, but, as the BP court also noted, Canadian courts often refer to American case law regarding the Sudden and Accidental Exception due to its wide consideration in the United States (id.).[FN7]

Finally, even if the Court were to adopt Zatko, the Zatko court rejected the claim that the Sudden and Accidental Exception to the Pollution Exclusion covered consequential damage once the Patersons knew of the pollutant, made whatever remedial measures they decided were [*9]appropriate, and then pollutant damage occurred elsewhere.[FN8]
The Copper Cliff Smelter site reports (NYSCEF Doc. No. 1141) disclose that, in 1974, there was spillage on the surface (id. at 11). This was known to Vale Canada's predecessor, Inco Limited (Inco), at the latest, as of 1974, the year of the report. To be clear, this surface spill is not the damage that Vale Canada is now seeking coverage for.[FN9]
Rather, Vale Canada seeks coverage for the consequential occurrence of the surface pollutant spreading to the groundwater.[FN10]
Thus, even were the Court to apply Zatko, as Vale Canada contends it should, Vale Canada would nonetheless still not be entitled to coverage. 
As such, it would appear that under either Ontario law or New York law, the Sudden and Accidental Exception would not apply to Vale Canada's coverage claims for consequential groundwater pollutant damage. Thus, the Insurers are entitled to judgement as a matter of law that the Pollution Exclusion in the Policies conclusively bars Vale Canada's claims for insurance coverage as to the Test Sites. Accordingly, the Insurers' motions for summary judgment are granted in their entirety. 
For the avoidance of doubt, Vale Canada's motions for judicial notice and partial summary judgement are denied as moot.[FN11]

The Court has considered the parties' remaining arguments and finds them unavailing.
Accordingly, it is hereby
ORDERED that Vale Canada's motion (Mtn. Seq. No. 030) for judicial notice is DENIED; and it is further
ORDERED that the Insurers' motions (Mtn. Seq. Nos. 027 and 029) for summary judgment as to the Test Sites are GRANTED; and Vale Canada's cross-motions for partial summary judgment are DENIED; and it is further
ORDERED that Vale Canada's motions (Mtn. Seq. Nos. 034 and 035) for partial summary judgment on the issue of notice are DENIED; and it is further
ORDERED that the Insurers may serve judgment on notice.
DATE 2/26/2025
ANDREW BORROK, J.S.C.

Footnotes

Footnote 1:Although Vale Canada adduces the affirmation of Gordon G. Hilliker, K.C (Hilliker Affirmation; NYSCEF Doc. No. 743), a Canadian insurance coverage lawyer, in support of its argument that the Court should conduct a choice of law analysis, previously, and without any subsequent change in Ontario law settling Ontario law, Mr. Hilliker indicated that Ontario caselaw remained unsettled as to the interpretation of the Sudden and Accidental Exception (NYSCEF Doc. No. 1079). Although, at that time, Mr. Hilliker was commenting on precedential authority in British Columbia, the three cases that Mr. Hilliker relied on were Ontario trial court decisions.

Footnote 2:The Court notes that Mr. Hilliker did not mention his new opinion that BP failed to properly follow horizontal stare decisis in the Teck Affirmation and in fact, as Chris Paliare notes, no court has come to this conclusion at to this 1990 case.

Footnote 3:As discussed below, to the extent that she is unable to identify an event and merely refers to the site closure reports, the 1974 Copper Cliff Smelter site report identifies a spillage. It does not identify the consequential pollutant damage to the groundwater identified in the interrogatories which does not fall into the Sudden and Accidental Exception to the Pollution Exclusion for the reasons discussed below.

Footnote 4:However, although true, and as discussed below, the Court also held in Zatko that the subsequent leak occurred over a lengthy period of time such that the Patersons (the insured) was completed whatever remediation they deemed appropriate and the resulting consequential damage could no longer be considered Sudden and Accidental.

Footnote 5:As Mr. Paliare points out, Mr. Hilliker fails to reference a single case where "a superior court trial judge disregarded a prior decision of the same court on the basis that the prior decision did not abide by horizontal stare decisis (NYSCEF Doc. No. 1061 ¶ 11). Indeed, as Mr. Paliare notes, no Canadian court has ever held that BP violates horizontal stare decisis since BP was decided in 1990 (id. ¶ 12). The Paliare Affirmation further indicates that "BP has been followed in a number of subsequent Canadian decisions" and has never been distinguished based on its interpretation of the sudden and accidental exception (id. ¶ 13). In fact, subsequent Canadian caselaw have supported the BP court's reasoning that conflating "sudden" with "accidental" essentially renders part of the phrase meaningless and redundant, resulting in "surplusage" (id. ¶ 17).

Footnote 6:For completeness, Re Hansard Spruce Mills, [1954] 4 D.L.R. 590 (B.C.S.C.) was also not precedent which bound the BP court because it was a decision of a trial court in British Columbia "and therefore has and had no precedential value for any court outside of British Columbia, including the Superior Court of Ontario" (id. ¶ 22).

Footnote 7:As discussed above, under the reasoning of Northville, the Sudden and Accidental Exception would not apply.

Footnote 8:Zatko bifurcated the distinction between the initial leak and the subsequent leak. Zatko held that the initial leak was certainly sudden and accidental because it was both unintended and satisfied the temporal element, but that the subsequent leak occurred over a lengthy period of time such that the insured, the Patersons, were put on notice and the resulting damage can no longer be considered sudden and accidental. As such, the BP court did not reject the reasoning in Zatko, as Mr. Hilliker so contends, but simply accepted the bifurcations set forth by the Zatko court.

Footnote 9:Under Zatko, were the Court to apply Zatko, the surface spill would be covered by the Sudden and Accidental Exception.

Footnote 10:This ancillary consequent pollutant damage to the groundwater cannot be held to be Sudden and Accidental even under Zatko. Similarly to the Patersons, Vale Canada implemented whatever remediation it believed to be appropriate and thus, similarly to the Patersons, Vale Canada is not in a position to now claim that the ancillary consequential damages are Sudden and Accidental. As such, even if there was a sudden event as it relates to a spill in 1974, Vale Canada's knowledge and handling of that spill, and the subsequent consequential contamination of groundwater that followed as a result, would fall squarely within the second holding in Zatko.

Footnote 11: Among other things, putting aside that the timeliness of any notice would not affect coverage for the reasons set forth above, the Court has not been presented with any specific notice for which the Court could opine as to its timeliness and could only offer what would amount to be an impermissible advisory opinion.